## CAMPBELL et al. v. SLOANE et al.

(Supreme Court, General Term, First Department.   February 17, 1893.)

1. FACTORS—ACTION FOR ACCOUNTING—PLEADING AND PROOF—VARIANCE.
   In an action by consignors against S. and B. for an accounting and for an injunction restraining them from disposing of certain machinery used by them in conducting plaintiffs' business, and certain goods consigned to S. and the proceeds thereof, the complaint alleged that S. was plaintiffs' selling agent; that B. was formerly such agent, and subsequently was in some manner unknown to them connected with S. in the business.   S., in his answer, denied that he was plaintiffs' selling agent, admitted the consignment of the goods, and set up a counterclaim for money advanced for plaintiffs.   He conceded that plaintiffs had his guaranty that on the sale of the goods consigned to him they should receive a sum equal to the net invoice price at the place of shipment.   *Held* that, though the evidence showed that the original relation between B. and plaintiffs continued, and that S. was not strictly the latter's selling agent, there was not such variance between the pleading and proof as entitled defendants to a dismissal of the complaint.

2. SAME—CAUSE OF ACTION—JUDGMENT.
   In such action it appeared that the original mode of doing business consisted in B.'s obtaining orders for plaintiffs' manufactured garments, which orders were forwarded by S. to them, and by them filled by consignments to S., by whom the goods were distributed to the persons ordering them; that later defendants undertook—at first in a small way, and then more extensively—to manufacture the garments with machinery they had procured, out of piece goods ordered of plaintiffs; and that the question whether plaintiffs had authorized such manufacture was the principal question litigated. *Held*, that a judgment for plaintiffs against S. for a specific sum as the balance due them for goods consigned was not erroneous on the ground that the recovery was allowed on a different cause of action than the one pleaded.

3. SAME—EVIDENCE.
   Such judgment entered on the report of a referee is not erroneous because not supported by sufficient evidence, where it appears that the true relation of the parties and the condition of the accounts were questions of fact, to be determined on conflicting testimony and the investigation of complicated accounts.

4. SAME.
   Where plaintiffs obtained an injunction pending trial on the ground that they were the owners of the machinery, fixtures, and book accounts, and subsequently obtained possession of the same thereunder, a failure to credit S. with the value of such articles is erroneous, unless it appears that the title to the same was not in him.

5. SAME—NEW REFERENCE.
   Where the value and title of such property cannot be determined from the evidence, a new trial must be ordered before a new referee.

6. SAME—EVIDENCE.
   Where it appears from plaintiffs' evidence that they received several of the machines in dispute, and that their attorneys and agents received the fixtures and book accounts, a finding by the referee that such property was not turned over to plaintiffs is erroneous.

Appeal from judgment on report of referee.

Action by George Campbell and William Achnach against Robert F. Sloane and William Bell for an accounting and an injunction.   From a judgment in favor of plaintiffs, defendant Sloane appeals.   Reversed.

Argued before VAN BRUNT, P. J., and O'BRIEN and FOLLETT, JJ.

Abraham Gruber, (Alfred R. Page, of counsel,) for appellant.
Holt & Butler, (George C. Holt, of counsel,) for respondents.

O'BRIEN, J. This action was brought for an accounting. The complaint, in substance, alleges that the plaintiffs, who were engaged in business as waterproof and India rubber manufacturers in the city of Glasgow, Scotland, had in the year 1888 entered into an agreement with the defendant Sloane, by which the latter was employed as their selling agent in the city of New York, and that at divers times in the years 1888, 1889, and 1890 the plaintiffs shipped from Glasgow to the defendant at New York large quantities of goods and merchandise, consisting mainly of material for making up rubber garments, which were received by the defendant; that it was provided in such agreement that the goods should be shipped upon defendant Sloane's request, and that such request should be made only to secure fulfillment of actual orders for such goods antecedently received by the defendant; that the defendant should sell the goods when received at such a price that the net proceeds which the plaintiffs should realize upon such sales would be not less than the invoice price of such goods at Glasgow, which net proceeds defendant was to remit to the plaintiffs as the sales were completed. It was further alleged that in violation of this agreement requests were sent for goods for which no antecedent orders had been received, and that sales of goods were made at a price less than the invoice price, and that the defendant had failed to remit the proceeds of sales made by him, as required by the agreement. Then followed an allegation that the defendant held, as agent of the plaintiffs, "large quantities of goods and merchandise, machinery, furniture, and fixtures and other property, including book accounts and cash, all of which is the property of the plaintiffs." The portion of the complaint referring to the defendant Bell avers that, prior to the making of the agreement with Sloane, Bell had acted as the plaintiffs' selling agent in New York, but ceased to act on the making of such agreement, but thereafter became associated with defendant Sloane in his business as selling agent of plaintiffs, "but the nature of the relation between Sloane and Bell is unknown to plaintiffs;" but that by reason of such relation Bell claimed some right in the business of Sloane, and particularly the right to sell and dispose of some portion of the property. The relief asked was for an injunction, restraining the disposition of the property, for a receiver of the goods, merchandise, machinery, furniture, and fixtures and other property, including book accounts, and for the turning over to the plaintiffs of all property in the possession of either of the defendants belonging to the plaintiffs. Upon this complaint and an affidavit a preliminary injunction was granted, and upon the motion to continue this injunction during the pendency of the action an offer was made by plaintiffs' attorney to give a bond conditioned for the payment of all charges of the defendant Sloane, upon condition that the latter should turn over to the plaintiffs all the goods and merchandise in his possession or under his control, or that of his codefendant, Bell. The offer having been accepted, an order was entered, providing, among other things, for a reference. It appeared as the result of this order that the defendant Sloane turned over to the plaintiffs, under their claim of title in the same, in addition to the goods and merchandise, all the ma-

chinery, fixtures, and book accounts. The answer of the defendant Sloane denied that his relation to plaintiffs was that of a selling agent, but admitted the possession of certain goods, wares, and merchandise consigned to him by plaintiffs; but by way of counterclaim alleged that he had advanced for their use and benefit about the sum of $10,000, which he claimed as a lien on the goods, and for which he prayed judgment, and it was to secure such counterclaim, if established, that the bonds was given. ·

Upon the issues thus presented, a great amount of testimony was taken by the referee; and while it was shown that the original relation which Bell had with the plaintiffs as their agent for the purpose of selling their goods or soliciting orders had remained unchanged, and that the defendant Sloane was not, strictly speaking, their selling agent, the argument that there was a fatal variance between the allegations of the complaint and the proof, such as would have entitled the defendant to a dismissal of the complaint, or prevented the motion to conform the pleadings to the proof, we do not regard as well founded. The defendant Sloane conceded that at his request the plaintiffs had consigned large quantities of their goods, both manufactured and in piece, for which they had his guaranty that upon the sale thereof they should receive a sum equal to the net invoice price at Glasgow. It would appear that the original mode of doing business, after the agreement with Sloane, at first consisted in Bell's obtaining orders for the plaintiffs' articles as manufactured in Glasgow, which were forwarded through the defendant Sloane to plaintiffs, and by the latter filled by consignment of the goods called for by the orders to Sloane, and by him distributed to those ordering them. Later, however, the defendants undertook—at first on a small scale, and then in a larger way—to order piece goods from plaintiffs, and, with the machinery which they had themselves procured, proceeded to manufacture here rubber garments out of such piece goods. Whether the plaintiffs ever acquiesced in or consented to the defendants' engaging in the manufacturing business for their account, in which, as it would appear, there was a loss, was the principal question litigated upon the trial; for upon it depended the establishment of the defendant Sloane's counterclaim. That the defendants, Sloane and Bell, held towards the plaintiffs the relation of agents, is beyond dispute. And the appellant is mistaken in assuming that the complaint or the judgment of the referee was based upon the theory that a recovery should be allowed as for goods sold and delivered. The plaintiffs' right to a return of the property and to an accounting, as shown by the complaint, was squarely placed upon the ground that the defendants held towards them the relation of agents, and having, in that capacity, obtained possession of their property, under an arrangement that they were to guaranty that not less than the invoice price should be remitted to plaintiffs, the latter were entitled to a return of the money received by the defendant Sloane upon a sale of their goods to an amount equal to that guaranty, and upon breach of the agreement they were entitled to a return of the property which he held in his possession unsold. It will thus be seen that we do not agree

with the appellant's contention that the plaintiffs were allowed to recover on an entirely different cause of action than that pleaded. Nor do we think the criticism justified, upon the pleadings and proof, that the record presented the anomaly of one cause of action pleaded, a second and distinct cause of action proved, and a judgment on a cause of action neither pleaded nor proved. On the contrary, we think, in an equitable action of this kind, brought for an accounting, and in which the questions at issue were the relations between the parties, as to whether such relations entitled the plaintiffs to an accounting and to other equitable relief, though the term given to the defendant Sloane of "selling agent" may not be aptly and peculiarly suited to his position, the referee was not prevented, upon evidence showing that he was an agent of the plaintiffs, and that this designation was a mere misnomer, from receiving the proof, and according the relief to which, under the proof offered, the plaintiffs were entitled. The issues as to the true relation between the parties, the condition of the accounts, and the amount due from one to the other, were purely questions of fact, depending for their solution upon conflicting testimony and the investigation of complicated accounts; and under such circumstances it is only in case a distinct error or errors can be pointed out that this court will undertake to disturb the conclusion reached thereon by a referee. The duty of the court in such cases is thus stated in Roosa v. Smith, 17 Hun, 138.

"We understand this court has the power to examine the evidence and the findings of fact in cases tried before the referee or the courts; that it has the power, and it is its duty, to interfere when facts have been found without evidence, or clearly against evidence; but we do not understand it can be called on in doubtful cases, upon conflicting evidence, depending upon the character and credibility of. witnesses, to review and readjust the facts upon the evidence as it shall appear to it on paper.."

The referee having found in plaintiffs' favor upon the question disposes of the contention that they were responsible for the loss in the manufacturing business carried on in New York; and so we might say with regard to the substantial questions presented in the case; and, were it not for the error into which the plaintiffs' counsel originally fell in claiming. in addition to the merchandise, the machinery, fixtures, and book accounts as the property of the plaintiffs, there would be no ground for disturbing the judgment. Having, however, obtained an injunction on the ground of such ownership of machinery, fixtures, and book accounts, and having thereunder obtained possession of them, and, so far as appeared, having still possession of them, we fail to see why credit for the value of this property so taken should not have been allowed by the referee. The referee in taking the account charged the defendant Sloane with consignments to him from the plaintiffs at their invoice value, giving him credit for cash remitted, merchandise turned over in bond, and for. damaged goods, thus leaving a debit balance of $2,023.43; and it was for this amount that judgment was awarded.

We had hoped, upon an examination of the record, in order to avoid a new trial, that we could have determined the value of these articles.

and permitted a modification of the judgment to that extent. But, under the view taken by the referee, that the defendant Sloane was not entitled to credit for the value of the machines, fixtures, samples, and patterns, because never turned over to the plaintiffs by the defendant Sloane or by anybody else, but sparse evidence of such value was admitted in the case, and it is therefore impossible for us to determine what allowance should be made to the defendant Sloane therefor. With respect to the machinery, it may well be, from the relation existing between Bell and Sloane, that such machinery was the property of Bell, and not the property of Sloane; but this cannot be determined from the evidence. All that appears tends to show that the machinery was procured by Bell with moneys advanced by Sloane, but whether this was under an arrangement that the title was to be in Bell or in Sloane is left in doubt. This doubt is increased when we remember that the machinery was placed in premises occupied by both Bell and Sloane. The referee's finding that it was not turned over to the plaintiffs by anybody is clearly without support in the evidence, because it distinctly appears from the testimony of one of the plaintiffs that 12 of the sewing machines—which, he testified, if new, would be worth about six pounds apiece, and one button-hole machine, which would be worth eighteen pounds new, but which he testified was, because old and defective, of little value—were in his possession. In addition, one of plaintiffs' attorneys' firm testified that he took possession of these machines, and sent them over to plaintiffs; that the fixtures in the place he sent to a Mr. Wright, who was then the plaintiffs' representative in this country; and that as to the books of account he took them himself, though he subsequently turned them over to Mr. Wright, who wrote to the people concerning the debts due from them. It will be remembered that the conclusion that the defendant was indebted to the plaintiffs in the amount found by the referee was reached by charging the defendant with the invoice price of goods consigned, and that still the book accounts, which represented the prices obtained by the defendant Sloane for the goods sold, were being collected for plaintiffs' account; thus preventing the defendant Sloane from collecting moneys for the very goods with which, in the account as between him and the plaintiffs, he had been charged. In other words, in addition to obtaining the value of the consignments in the shape of a judgment based upon the invoice value of the goods, the plaintiffs took book accounts, which represented the only means left to the defendant Sloane to obtain for himself payment for the goods for which, by being charged, he had accounted to plaintiffs. We think, therefore, that for the book accounts taken possession of by the plaintiffs, or transferred to them, to the extent, at least, that the same were collected, the defendant is entitled to a credit; and we also think that, the machinery and fixtures being taken from the possession of Sloane by force of the injunction order, which, concededly, the plaintiffs had no right to take, because not their property, the value of such machinery and fixtures should be credited to the defendant, unless it was proven that Sloane did not own them. As we cannot determine upon the evidence the

amount of such credits, nothing remains to be done except to reverse the judgment and order a new trial before new referee, with costs and disbursements to appellants to abide the event. All concur.